FILED

**United States District Court**
**Northern District of Alabama**
**Southern Division**

03 JUN -4 PM 1:35

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| Gina Lindsey, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-02-CO-0534-S |
| Burlington Northern Santa Fe Railway Company, | ] |
| Defendant(s). | ] |

**ENTERED**
JUN 0 4 2003

**Memorandum of Opinion**

### I.   Introduction.

Presently before the court is a motion for summary judgment, filed by the defendant on March 31, 2003, [Doc. # 30], as well as a motion to strike the affidavit of Karen Foster, filed by the plaintiff on April 14, 2003, [Doc. # 36]. The issues raised in the motions have been fully briefed by the parties, and are now ripe for decision. Upon due consideration, the court is of the opinion that the motion for summary judgment is due to be granted, and the motion to strike is due to be denied.

### II.   Facts.[1]

The plaintiff, Gina Lindsey ("Ms. Lindsey"), has been employed by the defendant, Burlington Northern Santa Fe Railway Company ("BNSF"), as a trackman since November 28, 1994. In that capacity, she performs maintenance on the track at various locations. She

---

[1] The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



is one of five females out of 754 trackmen who work in BNSF's District 900, and one of two females out of 914 trackmen in District 600. Ms. Lindsey is a member of the Brotherhood of Maintenance of Way Employees Union ("the Union"). The relationship between BNSF and its union-represented employees is governed by a collective bargaining agreement ("CBA"). Pursuant to the CBA, short vacancies, which are positions that are open for less than thirty days, are to be assigned to the most senior but qualified employee who is then furloughed or working in a lower paying position.

Often, when a short vacancy becomes available, the Roadmaster[2] overseeing a particular job will fill the vacancy with the appropriate person, in terms of seniority, already at that job-site who is working in a lower paying position (called a "field move"). If the Roadmaster does not know who should fill the short vacancy, the proper procedure is for him to call Manpower Planning[3] and request that Manpower Planning determine who should fill the vacancy. When a Roadmaster makes a promotion from the field, he is required to notify Manpower Planning that the short vacancy has been filled, and Manpower Planning will document the name of the person who filled the vacancy. Occasionally, a Roadmaster will mistakenly fill a short vacancy with an individual from the field who is not the most senior qualified employee. This will result in a more senior individual erroneously being furloughed or working at a lower paying job. However, if that more senior individual has recently been furloughed from another job, he has seven days within which he may "bump" a less senior person from a job for which he is qualified.

---

[2] Roadmasters supervise maintenance of the track in the field.

[3] Manpower Planning is the department responsible for filling job vacancies pursuant to the CBA.

Ms. Lindsey makes a number of allegations of discriminatory acts; as will be discussed below, many of the acts complained of are not actionable because they are time-barred under the administrative requirements of Title VII. The court's recitation of the facts will discuss only those facts it concludes are actionable and therefore relevant to Ms. Lindsey's claims.

On January 13, 2001, Ms. Lindsey filed a grievance with the Union alleging that a male with less seniority worked on a job from December 11, 2000, through December 15, 2000, while she was furloughed. She could not identify the Roadmaster involved in the assignment of the less senior male employee. BNSF agreed to settle Ms. Lindsey's claim on February 6, 2001, and it fully compensated her for the time the less senior employee was on the job.

On February 9, 2001, Ms. Lindsey filed another grievance with the Union, alleging that a male with less seniority was permitted to work from January 8, 2001, through January 19, 2001, while she was furloughed. Ms. Lindsey identified Gabe Metcalf as the Roadmaster who transferred the less senior employee to the position. On March 8, 2001, BNSF determined that a male with less seniority was working while Ms. Lindsey was furloughed, and it paid her for this time.

BNSF has established that mistakes of the type that resulted in Ms. Lindsey being furloughed while less senior males were working occur frequently; in 2001, the claims of eighty-six male employees who alleged that less senior employees filled short vacancies were paid by BNSF, and in 2002, BNSF paid similar claims of fifty-six male employees.

Moreover, on at least three occasions, Roadmasters filled short vacancies with Ms. Lindsey while qualified and more senior male employees were furloughed.

In addition to the incidents that resulted in Ms. Lindsey filing the two grievances discussed above, Ms. Lindsey alleges BNSF discriminated against her with respect to opportunities to work on machines. Specifically, she alleges that she was bumped from operating the spiker machine[4] in March 2001, by a male employee. However, she admits that she was not qualified to operate the spiker machine at that time. Ms. Lindsey also alleges she was denied access to the spiker machine in April 2001, on the basis of her sex, while less senior employees were allowed to run the machine at that time. However, it is undisputed that one of the employees who was running the machine at that time was a woman.

Ms. Lindsey also alleges that BNSF discriminated against her by failing to reimburse her for mileage in April 2001. Ms. Lindsey traveled from her home in Birmingham to a job in Mississippi, and she was under the impression that she was entitled to receive compensation for mileage if she had to travel more than seventy-five miles to reach a job-site. However, her claim for mileage was denied because she was not eligible to be compensated for mileage under the CBA.[5]

---

[4] The court is not at all certain what a spiker machine is; however, that detail is immaterial. All the court needs to know is that Ms. Lindsey wanted to operate the spiker machine, she was not permitted to do so, and she believes the reason she was not permitted to operate it was that she is a female.

[5] The court does not know why Ms. Lindsey was ineligible for mileage compensation under the CBA; neither of the parties submitted a copy of the CBA to the court.

Finally, Ms. Lindsey alleges she was subjected to sex discrimination when her position on a gang in New Albany, Mississippi was abolished by a male Roadmaster in April 2001. When her job on that gang was abolished, Manpower Planning allowed her to bump a less senior male on that gang, and she missed no time working.

On June 4, 2001, Ms. Lindsey filed a charge of discrimination with the EEOC, alleging that BNSF discriminated against her on the basis of her sex. She filed her complaint, alleging sex discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, on February 28, 2002. She claims that various Roadmasters' decisions to place less senior males in positions for which she was eligible were made on the basis of her sex. The instant motion for summary judgment was filed on March 31, 2003, along with evidence in support thereof, including the affidavit of Karen Foster ("Ms. Foster"). Ms. Lindsey moved to strike Ms. Foster's affidavit on April 14, 2003.

### III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to

present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV. Discussion.

### A. Motion to strike.

Ms. Lindsey contends that Ms. Foster's affidavit is due to be stricken because, she argues, it contains inadmissible evidence. Specifically, Ms. Lindsey argues that Ms. Foster's affidavit is not based on personal knowledge as required by Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602. *See Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002).

Ms. Foster's affidavit states that she has "personal knowledge of the matters" therein, and identifies her as the manager over the clerical group at Manpower Planning that fills job vacancies and handles employment issues for Union employees. (Foster Aff. ¶¶ 2-3.)

Ms. Foster's affidavit describes the procedure Manpower Planning and Roadmasters in the field follow in filling short vacancies pursuant to the CBA, and opines that field moves in which a less senior employee is mistakenly promoted to an open position "may be the basis for Plaintiff's grievances that she submitted to [the Union] in 2000 and 2001 in which she alleged that she was furloughed while less senior males were permitted to work." (Foster Aff. ¶ 15.) Ms. Foster also details statistics of male employees whose claims were paid by BNSF, and discusses particular instances in which the plaintiff was employed while more senior males were furloughed as a result of field moves.

The court is of the opinion that Ms. Foster's affidavit is not due to be stricken. The bulk of Ms. Foster's testimony relates to corporate policy and procedure, something about which she is certain to have personal knowledge given her position at BNSF. *See, e.g., Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002); *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). Moreover, given that Ms. Foster states she has personal knowledge as to the balance of the testimony in her affidavit, and given her position with the corporation, the court is satisfied that Ms. Foster's testimony providing statistics and discussing particular situations involving the plaintiff is "made on personal knowledge" and "set[s] forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). Therefore, the motion to strike is due to be, and will be, denied.

**B.      Motion for summary judgment.**

As an initial matter, the court notes that Ms. Lindsey's complaint includes a claim based on sexual harassment in the workplace; however, she does not brief the issue in her opposition to the motion for summary judgment. Therefore, the court considers the sexual harassment claim abandoned, see *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and Ms. Lindsey's only remaining claim is her claim for sex discrimination under Title VII.

Additionally, as alluded to above, Ms. Lindsey makes a number of allegations that are not actionable. A Title VII claimant alleging discrete acts of discrimination (as opposed to a claim based on a hostile environment) can pursue only those claims based on discriminatory acts that occurred in the 180-days immediately preceding the filing of a charge of discrimination with the EEOC. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Ms. Lindsey filed her charge of discrimination on June 4, 2001. Therefore, the court can consider only those discrete acts that occurred between December 6, 2000, (180-days before June 4, 2001), and June 4, 2001. Ms. Lindsey alleges four discriminatory acts that are not time-barred: (1) the events giving rise to her January 13, 2001, and February 9, 2001, grievances, (2) the events relating to the operation of the spiker machine, (3) the mileage compensation incident, and (4) the abolishment of her position on the New Albany gang. After a discussion of the applicable legal principles, the court will address each of the four alleged discriminatory acts in turn.

### 1. The legal framework.

Ms. Lindsey claims she was intentionally discriminated against on the basis of her sex – female – in the terms and conditions of her employment with BNSF. "Whether an employer intentionally discriminated against an employee . . . is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (citation omitted). Because Ms. Lindsey has not alleged any facts to support a direct evidence case, she must prove her case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* analysis, the plaintiff creates a rebuttable presumption of discrimination by proving a prima facie case of discrimination, which consists of proof that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) a similarly situated employee outside the protected class was treated more favorably. *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002). The defendant can rebut the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for the challenged employment action. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1336 (11th Cir. 2000). Once the presumption is rebutted, the employer is entitled to summary judgment unless the plaintiff proffers evidence from which a reasonable factfinder could conclude that the reason articulated by the defendant is mere pretext for discrimination. *Alexander*, 207 F.3d at 1336.

2.  **The grievances.**

Ms. Lindsey filed two grievances relating to less senior male employees working in positions for which she was qualified while she was furloughed. As to these claims, the court is satisfied that Ms. Lindsey has established three of the elements of her prima facie case: she is a member of a protected class (female), similarly situated males were treated more favorably (less senior males were working at that time), and she was qualified for the jobs in question. However, the court concludes that Ms. Lindsey's claims must fail due to her inability to establish an essential element of her prima facie case – that she suffered an adverse employment action.

An adverse employment action, for purposes of Title VII liability, involves "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). Indeed, "the asserted impact . . . must at least have a tangible adverse effect on the plaintiff's employment" for the alleged adverse act to give rise to a cognizable claim. *Davis*, 245 F.3d at 1239.

With respect to the incidents giving rise to the grievances, it is undisputed that Ms. Lindsey was eventually paid for her time when BNSF settled her claims. Thus, although she was furloughed when other less senior males were working, this ultimately resulted in no tangible harm or change in the terms, conditions or privileges of employment, as she was compensated as if she had worked during that time. Because she did not suffer any change in her employment status, much less any serious and material change, she did not suffer an adverse employment action. Therefore, she cannot make a prima facie case of sex

discrimination with respect to the incidents giving rise to the grievances. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) ("[T]he decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action."); *Crittenden v. Int'l Paper Co. Wood Prods. Div.*, 214 F. Supp. 2d 1250, 1254 (M.D. Ala. 2002) ("[W]hile the failure to immediately reinstate [the plaintiff] to the position he held prior to his termination, standing alone, may have been an adverse employment action, the relief [the plaintiff] received as a result of the grievance process, including full reinstatement and back pay, removes the initial decision not to reinstate him to his former position from the scope of the protection of [Title VII]."). Summary judgment as to these claims is therefore due to be granted.

### 3. The spiker machine.

Ms. Lindsey claims she was discriminated against on the basis of her sex with respect to her ability to use the spiker machine at work. The court is of the opinion that Ms. Lindsey cannot establish a prima facie case of discrimination with respect to the use of the spiker machine. Although she is a member of a protected class, and the court assumes that similarly situated male employees are qualified to work on the spiker machine, Ms. Lindsey admits that she is not qualified to run the spiker machine. (Lindsey Dep. at 34.) Moreover, there is no evidence to suggest that operating the spiker machine involved any increase in pay or prestige, such that Ms. Lindsey's inability to operate the machine would qualify as an adverse employment action. *See Davis*, 245 F.3d at 1239. Finally, any argument that she was denied access to the spiker machine on the basis of sex is belied by the fact that the spiker machine was operated in April 2001, by at least one female. Having failed to establish

two elements of her prima facie case, Ms. Lindsey's claim of sex discrimination based on her inability to work the spiker machine must fail, and the motion for summary judgment based on this claim will therefore be granted.

### 4.  Mileage compensation.

Ms. Lindsey claims she was the victim of sex discrimination when she was denied mileage compensation in April 2001, when she traveled from her home in Birmingham to a job in Mississippi. This claim must also fail, as there is no evidence to suggest that similarly situated males were paid mileage compensation. Moreover, even if Ms. Lindsey could establish a prima facie case of discrimination with respect to mileage compensation, she has proffered no evidence to suggest that BNSF's legitimate reason for denying her mileage compensation – that she was ineligible for it under the CBA – is mere pretext for sex discrimination. Therefore, summary judgment as to her discrimination claim based on the denial of mileage compensation is due to be granted.

### 5.  The New Albany, Mississippi gang.

Finally, Ms. Lindsey alleges that she was discriminated against on the basis of sex when her position on the New Albany, Mississippi gang was abolished in April 2001. As with the incidents giving rise to Ms. Lindsey's grievances discussed above, Ms. Lindsey cannot establish that she suffered an adverse employment action when her position was abolished in New Albany. Although her position was eliminated, because she was immediately permitted to bump one of the junior males working on the same gang, she missed no time working and lost no compensation. Therefore, there was no change in her employment

status, and she did not suffer an adverse employment action sufficient to trigger liability under Title VII. *See Davis*, 245 F.3d at 1239. Summary judgment as to this claim is proper.

**V.     Conclusion.**

Having concluded that Ms. Lindsey cannot establish a prima facie case of sex discrimination with respect to any of the alleged discriminatory acts complained of, the court will grant the defendant's motion for summary judgment in all respects. Additionally, the plaintiff's motion to strike the affidavit of Karen Foster will be denied. An appropriate order in conformity with this memorandum of opinion will be entered.

Done, this ___3rd___ of June, 2003.

                                                          L. Scott Coogler
                                                       United States District Judge